# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

CORY C. WELLS as Administrator of
the Estate of N.K.W., et al.,

    Plaintiffs,

vs.

LAMPLIGHT FARMS
INCORPORATED, et al,

    Defendants.

No. C13-4070-MWB

**ORDER**

_____

## TABLE OF CONTENTS

*I.   INTRODUCTION ........................................................................... 2*

*II.  BACKGROUND ............................................................................. 2*

*III. THE MOTION TO QUASH OR MODIFY A SUBPOENA ....................... 3*
    *A.   Introduction and Applicable Standards ......................................... 3*
    *B.   Analysis ............................................................................... 9*

*IV. THE MOTION FOR PROTECTIVE ORDER ...................................... 10*
    *A.   Introduction and Applicable Standards ....................................... 10*
    *B.   Analysis .............................................................................. 13*

*V.  CONCLUSION ............................................................................. 14*

# I. INTRODUCTION

This case is before me on two motions: (1) a motion (Doc. No. 33) filed by defendant Lamplight Farms Incorporated (Lamplight) to quash or modify a subpoena and (2) a motion (Doc. No. 45) for protective order filed by Lamplight and defendant W.C. Bradley Co. (Bradley), and joined by defendants Rexam Closures and Containers, Inc. (Rexam), and Berry Plastics Corporation (Berry). Plaintiffs have filed resistances (Doc. Nos. 32 and 47) with regard to both motions and the movants have filed replies (Doc. Nos. 41 and 57).

On March 5, 2014, I conducted a telephonic hearing on Lamplight's motion to quash or modify a subpoena. Attorneys A. Laurie Koller, Suzan Boden and Timothy Bottaro appeared for plaintiffs. Attorneys Richard Sapp and Ryan Koopmans appeared for defendants Lamplight, Bradley and Wal-Mart Stores, Inc. (Wal-Mart), and for the non-party subpoena recipient, Product Safety Resources, Inc. (PROSAR). While the hearing was limited to issues arising from the motion to quash or modify the subpoena, some discussion about Lamplight's separate motion for protective order also ensued. Having reviewed the parties' written submissions concerning the motion for protective order, I find no need for additional oral arguments concerning that motion. *See* Local Rule 7(c). Both motions are fully submitted.

# II. BACKGROUND

This case arises from the tragic death of N.K.W., the twenty-two month old daughter of plaintiffs Cory C. Wells and Bonnie J. Wells. Plaintiffs allege that on August 2, 2011, Cory J. Wells, N.K.W. and others were on a camping excursion in Dickinson County, Iowa, when N.K.W. ingested a product called "Tiki Citronella Torch Fuel with Lemongrass Oil" (the Citronella Torch Fuel). They further allege that N.K.W. died later that day.

Plaintiffs filed this action on July 30, 2013. The defendants include (a) Lamplight, which is alleged to have manufactured and distributed the Citronella Torch Fuel, (b) Rexam, which is alleged to have manufactured the child-resistant closure used by Lamplight for the Citronella Torch Fuel container, (c) Berry, which is alleged to be the successor-in-interest to Rexam (d) Bradley, which is alleged to have assisted Lamplight in the design, manufacture and distribution of the Citronella Torch Fuel, and (e) Wal-Mart, which is alleged to be the retailer from whom plaintiff Cory C. Wells purchased the Citronella Torch Fuel at issue. Plaintiffs allege that Mr. Wells purchased the Citronella Torch Fuel at a Wal-Mart Store in Spencer, Iowa, on or about August 1, 2011.

Plaintiffs assert two primary theories of liability. First, they allege that the child-resistant closure included with the Citronella Torch Fuel purchased by Mr. Wells was defective, thus allowing N.K.W. to open the container. Second, they contend that the container itself, when combined with the color and appearance of the enclosed fluid, resembled a bottle of apple juice. They contend that the container should have been opaque, not transparent, to avoid creating a dangerous "look alike" problem for young children such as N.K.W. The defendants have denied liability and contend that Mr. Wells was at least partially at fault. Trial is scheduled to begin June 15, 2015.

### III. THE MOTION TO QUASH OR MODIFY A SUBPOENA
#### A. *Introduction and Applicable Standards*

On or about December 18, 2013, plaintiffs served a document production subpoena (Subpoena) on PROSAR at PROSAR's place of business in St. Paul, Minnesota. Lamplight and PROSAR are parties to a written contract under which, generally, PROSAR provides health and safety services to Lamplight and fields call-in reports of possible ingestions of any Lamplight products. PROSAR often provides

preliminary advice and guidance to the callers, who include consumers and their health care providers. PROSAR provides similar services to other companies.

The Subpoena demanded that PROSAR produce eighteen categories of documents:

    1.    Copies of all Adverse Event Reports, of whatever kind, which were sent to Lamplight Farms, Incorporated, during the period January 1, 2002 to August 30, 2011.

    2.    Copies of all Adverse Event Reports, of whatever kind, that concern Lamplight Farms, Incorporated's products, which were sent to W.C. Bradley Company, during the period January 1, 2002 to August 30, 2011.

    3.    Copies of all reports of product complaints, received from any source whatsoever, which were sent to Lamplight Farms, Incorporated, during the period January 1, 2002 to August 30, 2011.

    4.    Copies of all reports of product complaints, received from any source whatsoever, that concern Lamplight Farms, Incorporated's products, which were sent to W.C. Bradley Company, during the period January 1, 2002 to August 30, 2011.

    5.    Copies of all reports of failures of child resistant closures, of any kind, which were sent to Lamplight Farms, Incorporated, during the period January 1, 2002 to August 30, 2011.

    6.    Copies of all reports of failures of child resistant closures, of any kind, which were sent to W.C. Bradley Company, during the period January 1, 2002 to August 30, 2011.

    7.    Copies of all reports dated from January 1, 2002 to August 30, 2011, which refer to Lamplight Farms, Incorporated's products, which were sent to any governmental entity and to Lamplight Farms, Incorporated.

    8.    Copies of all reports dated from January 1, 2002 to August 30, 2011, which refer to Lamplight Farms, Incorporated's products, which were sent to any governmental entity and to W.C. Bradley Company.

9. Copies of all documents dated from January 1, 2002 to August 30, 2011, concerning medical information related to the use or misuse of Lamplight Farms, Incorporated's products, which were sent to Lamplight Farms, Incorporated.

10. Copies of all documents dated from January 1, 2002 to August 30, 2011, concerning medical information related to the use or misuse of Lamplight Farms, Incorporated's products, which were sent to W.C. Bradley Company.

11. Copies of all internal memoranda dated from January 1, 2002 to August 30, 2011 that refer to, Lamplight Farms, Incorporated's products.

12. Copies of all internal memoranda dated from January 1, 2002 to August 30, 2011 that refer to Lamplight Farms, Incorporated's products, which were sent to W.C. Bradley Company.

13. Copies of all notes made of telephone conversations with any employee, officer, or director of Lamplight Farms, Incorporated that occurred between the dates January 1, 2002 to August 30, 2011.

14. Copies of all notes made of telephone conversations with any employee, officer, or director of W.C. Bradley Company that occurred between the dates January 1, 2002 to August 30, 2011 and which concern Lamplight Farms, Incorporated's products.

15. Copies of all E-mails dated from January 1, 2002 to August 30, 2011, which were sent to and/or received from any employee, officer, or director of Lamplight Farms, Incorporated.

16. Copies of all E-Mails, dated from January 1, 2002 to August 30, 2011, that concern Lamplight Farms, Incorporated's products, which were sent to and/or received from any employee, officer, or director of W.C. Bradley Company.

17. Copies of any and all test results that relate to Lamplight Farms, Incorporated's products, which were obtained between the dates of

> January 1, 2002 to August 30, 2011 and which were sent to Lamplight Farms, Incorporated.
>
> 18. Copies of any and all test results that relate to Lamplight Farms, Incorporated's products, which were obtained between the dates of January 1, 2002 to August 30, 2011 and which were sent to W.C. Bradley Company.

*See* Doc. No. 33-1 at 41-42. Lamplight, as required by Federal Rule of Civil Procedure 45(d)(3)(B), initially filed its motion to quash or modify the Subpoena in the United States District Court for the District of Minnesota. However, with the parties' consent that court transferred the motion to this court, as the court in which this case is pending, pursuant to Rule 45(f). Meanwhile, PROSAR served various objections to the Subpoena.[1] *See* Doc. No. 33-1 at 70-74.

In its motion, Lamplight argues that the Subpoena is overly broad and, therefore, would impose an undue burden on PROSAR, as a nonparty. Lamplight states that during the roughly ten-year period described in the Subpoena, it "manufactured and sold more than several hundred distinct and separate products that would be regarded as a fuel or oil." Doc. No. 33-1 at 19. It states that the Citronella Torch Fuel product is distinct from other fuel and oil products that Lamplight has manufactured in that it "is specifically designed and formulated for outdoor use in torches." *Id.* It then describes various differences between Citronella Torch Fuel and various candle and lamp oils Lamplight sells for indoor use. *Id.* at 20. While generally arguing that information about accidents

---

[1] The fact that PROSAR served objections normally would require plaintiffs to file a motion to compel compliance with the subpoena. *See* Fed. R. Civ. P. 45(d)(2)(B). Here, however, the same attorneys represent both PROSAR and Lamplight. During the hearing, counsel agreed that because Lamplight's motion to quash the subpoena is already pending, there is no need for plaintiffs to file a separate motion to compel against PROSAR. Moreover, while plaintiffs' resistance to the motion to quash makes some arguments concerning Lamplight's standing to assert the arguments presented in that motion, I find that those argument are now moot.

6

involving these other kinds of oils is not discoverable, Lamplight specifically argues that the scope of the Subpoena is particularly objectionable because it is directed at a nonparty. Lamplight asserts that it is in possession of the same documents and data as PROSAR and contends that PROSAR should not bear the expense of complying with the broad scope of the Subpoena. Lamplight asks that the Subpoena be quashed or, at least, limited in scope to cover only its Citronella Torch Fuel product.[2]

Plaintiffs, while denying that the Subpoena is overly broad or would impose an undue burden on PROSAR, have offered to reduce the scope of the Subpoena to "information regarding human ingestion of any Lamplight Farms' torch fuel or lamp oil packaged in pourable plastic bottles, both transparent and opaque, from 2002 to August 30, 2011." Doc. No. 32 at 6. They contend that limiting the subpoena to the Citronella Torch Fuel product would unfairly inhibit their ability to discover potentially-relevant information, especially with regard to their argument about Lamplight's use of transparent containers for its fuel and oil products. Plaintiffs explain that they seek to capture ingestion data comparing transparent and opaque containers to determine, for example, whether Lamplight should have known that fuel and oil sold in transparent containers is more likely to pose an ingestion hazard. They point out that more data is better, meaning that limiting its discovery to only the Citronella Torch Fuel product could deprive it of the chance to prove its hypothesis that transparent containers are more hazardous.

In its reply, Lamplight asserts that it sold over 100 million containers of Citronella Torch Fuel product during the time period described in the Subpoena. Thus, it contends,

---

[2] Lamplight also argues that some or all of the information sought by the Subpoena is of a confidential and/or proprietary nature. Lamplight appears to acknowledge that this assertion, even if supported by the evidence, would not deprive plaintiffs' of their right to obtain otherwise-discoverable information. Instead, the issue would become whether Lamplight is entitled to some form of protective order concerning the use and dissemination of that information. That will be addressed in Section IV, *infra*.

ingestion data concerning those containers will be more than sufficient for any statistical analyses plaintiffs may wish to conduct. Lamplight further contends that it did not sell *any* products in black or dark opaque containers until March 2012, several months after the accident at issue in this case. Thus, Lamplight argues that plaintiffs have failed to demonstrate a need for the full range of information described in the Subpoena.

Generally, a party may obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense. *See* Fed. R. Civ. P. 26(b)(1). The scope of permissible discovery is broader than the scope of admissibility. *See, e.g., Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). Nonetheless, "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Id*. Moreover, discovery must not only be relevant, it must also be proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(2)(C).

In a products liability case, such as this, a plaintiff is not automatically limited to discovery concerning the exact product model at issue, as information about similar models may be relevant. *Hofer*, 981 F.2d at 381. Of course, the question is always: "How similar is similar enough?" In *Hofer*, the Eighth Circuit Court of Appeals reviewed decisions from other jurisdictions in considering this question and found, under the facts present in that case, that the burden of producing documents concerning certain prior truck models outweighed any limited, potential relevance. *Id*. at 381.

The present procedural context adds another consideration to the balancing act. The target of the Subpoena, PROSAR, is not a party. The Rules of Procedure protect nonparties from being subjected to "undue burden or expense" in responding to a subpoena. *See* Federal Rule of Civil Procedure 45(d). Courts are particularly mindful of Rule 45's undue burden and expense limitations. *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 927 (8th Cir. 1999); *accord*

*American Broadcasting Co. v. Aereo, Inc.*, No. 13-MC-0059, 2013 WL 5276124, at *7 (N.D. Iowa Sept. 17, 2013); *Precourt v. Fairbank Reconstruction Corp.*, 280 F.R.D. 462, 467 (D.S.D. 2011). Indeed, if discovery can easily be obtained from a party, it may be inappropriate to demand the same discovery from a nonparty. *See, e.g., American Broadcasting*, 2013 WL 5276124, at *6; *Precourt*, 280 F.R.D. at 467.

### B. Analysis

In light of the principles set forth above, several factors weigh in favor of restricting the scope of the Subpoena. First, Lamplight notes that plaintiffs have requested the same information from it as the Subpoena requests from PROSAR. Second, Lamplight has submitted evidence, in the form of a declaration from PROSAR's President and Chief Executive Officer, describing the costs and burdens of complying with the Subpoena in its current form. *See* Doc. No. 33-1 at 44-47. Third, Lamplight states that it sold over 100 million units of the Citronella Torch Fuel product during the time period described in the Subpoena, thus creating a substantial pool of potentially-relevant data even if the Subpoena is limited to information concerning that product. *See* Doc. No. 33-1 at 54-55. Fourth, Lamplight states that it did not sell *any* fuel or oil product in black or dark opaque containers until several months after the incident at issue in this case, meaning there will be *no* pre-accident data from which to compare ingestion rates between transparent and non-transparent containers. *See* Doc. No. 41-3 at 1-2. Finally, discovery in this case is at a very early stage, as the discovery deadline does not expire for another ten months.

Under these circumstances, plaintiffs have not shown that the needs of this case, at least at this stage, justify the costs and burdens PROSAR would have to incur in order to comply with either the original Subpoena or the slightly-narrowed scope plaintiffs have proposed. Instead, I find that modifying the Subpoena in the manner proposed by

Lamplight is reasonable and appropriate. Lamplight's motion to quash or modify the Subpoena will be **granted**, as follows: PROSAR shall comply with the Subpoena, but only to the extent that the requested information relates to any TIKI Citronella Torch Fuel Product, without regard to the size of the container, formulation of the product, model of child-safety cap, or changes in labeling or packaging over time. PROSAR shall produce this information to plaintiffs' counsel within thirty (30) days of the date this order is filed. The issue of whether that information may be produced subject to a protective order will be addressed in Section IV, *infra*.

Of course, as discovery proceeds the needs of the case may change. Thus, plaintiffs are not precluded from seeking additional information from PROSAR at a later stage of this case if, for some reason, the information described above proves to be inadequate. At this time, however, plaintiffs have not established that the potential relevance of the additional information sought by the Subpoena justifies the costs and burdens of providing that information.

## *IV. THE MOTION FOR PROTECTIVE ORDER*

### *A. Introduction and Applicable Standards*

In their motion for protective order, Lamplight and Bradley contend that certain documents they will produce in this case are of a confidential nature such that they should not be disclosed to plaintiffs without some restrictions on their use and dissemination. They contend that they have engaged in numerous discussions with plaintiffs' counsel in an effort to reach agreement on the terms of a proposed order, to no avail. They also note that plaintiffs have entered into a stipulated protective order with Wal-Mart and express some chagrin that plaintiffs will not agree to similar terms with them. Lamplight and Bradley have submitted a proposed protective order (Doc. No. 45-1) that, they state,

would allow them to designate materials as "confidential" only to the extent permitted by Federal Rule of Civil Procedure 26(c).

Plaintiffs counter by stating (a) they are not required to agree to a protective order and (b) that Lamplight and Bradley have not demonstrated the required good cause for entry of a blanket protective order. They contend that since no information has yet been produced, Lamplight and Bradley cannot demonstrate that any such information is worthy of protection. Finally, they basically state "So what?" in response to the fact that they *have* agreed to a blanket protective order with defendant Wal-Mart.

The Rules of Procedure state, in relevant part:

(c)  **Protective Orders**.

(1)  *In General*. A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending-- or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

* * *

(D)  forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E)  designating the persons who may be present while the discovery is conducted;

(F)  requiring that a deposition be sealed and opened only on court order;

(G)  requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H)  requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

*See* Fed. R. Civ. P. 26(c). As subpart (G) suggests, the permissible scope of a protective order is not limited to trade secrets, but may include "other confidential … information." Documents may be protected if, for example, they contain "information about manufacturing processes, budgeting and finance issues, testing and other matters that would not generally be released for public consumption." *See, e.g., Eggerling v. Advanced Bionics, LLC*, No. C11-4104, 2013 WL 835974, at *3 (N.D. Iowa Mar. 6, 2013).

> The Supreme Court has explained the purpose of Rule 26(c) as follows:
>
> Rule 26(c) furthers a substantial governmental interest unrelated to the suppression of expression…. Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes. Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c). It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties. The Rules do not distinguish between public and private information. Nor do they apply only to parties to the litigation, as relevant information in the hands of third parties may be subject to discovery.
>
> There is an opportunity, therefore, for litigants to obtain—incidentally or purposefully—information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes.

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34–35 (1984) [citations and footnotes omitted]. The rule "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Id.* at 36.

## B. *Analysis*

Blanket protective orders are routinely entered in this District (and, I suspect, elsewhere) to resolve the logistical problem that is clearly highlighted by plaintiffs' resistance. Plaintiffs contend that because Lamplight and Bradley have produced no specific information, they cannot establish that any such information is worthy of protection. Of course, if Lamplight and Bradley were required to produce information first, and then seek protection, the information would be unprotected, and in another party's hands, until that protection was obtained. Allowing a party to produce allegedly-confidential information with a provisional designation pursuant to a blanket protective order resolves this practical problem.

Here, I find that Lamplight and Bradley have met the "good cause" requirement for entry of a blanket protective order by describing categories of requested information that may fall within the scope of Rule 26(c)(1)(G). *See, e.g.,* Doc. No. 57 at 2-3. Of course, this does not (as plaintiffs seem to suggest) give any defendant unilateral authority to make final decisions as to which documents are actually worthy of protection. Instead, and as the proposed order submitted by Lamplight and Bradley makes clear, any party disclosing information may make a provisional designation that the information is alleged to be "confidential" within the meaning of the protective order. Any other party may challenge that designation and, if the parties are unable to resolve the dispute, the matter may be submitted to the court for resolution. *See* Doc. No. 45-1 at ¶¶ 2-4. This is an entirely-appropriate procedure.

I further find that, with one exception, the proposed order submitted by Lamplight and Bradley is narrowly-tailored and appropriately protects the rights and interests of all parties. The exception is that, in my view, the period of time described in paragraph 4 for a receiving party to object to a "confidential" designation is simply too short. When

documents are produced in large batches, as is often the case, it is not always feasible for the receiving parties to evaluate all "confidential" designations and serve objections in that limited period of time. I conclude that sixty days is reasonable, instead, to prevent the inadvertent waiver of potentially-valid objections to "confidential" designations.

The motion for protective order filed by Lamplight and Bradley (and joined by Rexam and Berry) will be **granted**. Counsel for Lamplight and/or Bradley shall submit a proposed protective order, in Microsoft Word format, for my review via email, with copies to all other counsel. That proposed order shall be substantially similar to the proposed order filed as Docket Number 45-1, except (a) it shall make the change to Paragraph 4 that is described above and (b) it shall not be referred to as a "stipulated" order in light of the fact that plaintiffs, quite clearly, do not agree to its entry. I will review the order and enter it, if appropriate, promptly upon its receipt. Documents produced by PROSAR pursuant to the Subpoena, as discussed in Section III, *supra*, may be designated as "confidential" pursuant to the protective order to the extent that counsel for Lamplight and PROSAR deem, in good faith, that such designations are appropriate.

## V. CONCLUSION

Based on the foregoing:

1. Lamplight's motion (Doc. No. 33) to quash or modify a subpoena is **granted**, as set forth in Section III of this order.

2. The motion (Doc. No. 45) for protective order filed by Lamplight and Bradley, and jointed by Rexam and Berry, is **granted**, as set forth in Section IV of this order.

**IT IS SO ORDERED.**

**DATED** this 12th day of March, 2014.

                               _____
                               LEONARD T. STRAND
                               UNITED STATES MAGISTRATE JUDGE