# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| CORY C. WELLS as Administrator of the Estate of N.K.W., et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>LAMPLIGHT FARMS, INCORPORATED, et al.,<br><br>Defendants. | No. C13-4070-MWB<br><br>*ORDER* |

## I. INTRODUCTION

This case is before me on a motion (Doc. No. 67) by defendant Lamplight Farms Incorporated (Lamplight) to compel answers to interrogatories and discovery of records. Plaintiffs have filed a response (Doc. No. 68) and Lamplight has filed a reply (Doc. No. 70). I held a telephonic hearing on July 30, 2014. Attorneys A. Laurie Koller, Suzan Boden and Timothy Bottaro appeared for plaintiffs. Attorneys Richard J. Sapp and Jess William Vilsack appeared for Lamplight and for defendants W.C. Bradley Co. (Bradley) and Wal-Mart Stores, Inc. (Wal-Mart). Attorney Brandon Wayne Lobberecht appeared for defendants Rexam Closures and Containers, Inc. (Rexam), and Berry Plastics Corporation (Berry). The motion is now fully submitted.

## II. BACKGROUND

This case arises from the tragic death of N.K.W., the twenty-two month old daughter of plaintiffs Cory C. Wells (Cory) and Bonnie J. Wells (Bonnie). Plaintiffs allege that on August 2, 2011, Cory, N.K.W. and others were on a camping excursion

in Dickinson County, Iowa, when N.K.W. ingested a product called "Tiki Citronella Torch Fuel with Lemongrass Oil" (the Citronella Torch Fuel). They further allege that N.K.W. died later that day.

Plaintiffs filed this action on July 30, 2013. Cory asserts claims individually and as administrator of N.K.W.'s estate. Bonnie asserts claims individually. The defendants include (a) Lamplight, which is alleged to have manufactured and distributed the Citronella Torch Fuel, (b) Rexam, which is alleged to have manufactured the child-resistant closure used by Lamplight for the Citronella Torch Fuel container, (c) Berry, which is alleged to be the successor-in-interest to Rexam (d) Bradley, which is alleged to have assisted Lamplight in the design, manufacture and distribution of the Citronella Torch Fuel, and (e) Wal-Mart, which is alleged to be the retailer from whom Cory purchased the Citronella Torch Fuel. Plaintiffs allege Cory purchased the product at a Wal-Mart Store in Spencer, Iowa, on or about August 1, 2011.

Plaintiffs assert two primary theories of liability. First, they allege that the child-resistant closure included with the Citronella Torch Fuel purchased by Cory was defective, thus allowing N.K.W. to open the container. Second, they contend that the container itself, when combined with the color and appearance of the enclosed fluid, resembled a bottle of apple juice. They contend that the container should have been opaque, not transparent, to avoid creating a dangerous "look alike" problem for young children such as N.K.W. The defendants have denied liability and contend that Cory was at least partially at fault. Trial is scheduled to begin June 15, 2015.

### III. ANALYSIS

Through its motion, Lamplight seeks:

1. Disclosure of "other incidents" evidence plaintiffs intend to offer at trial.

2. Disclosure of Cory's and Bonnie's mental health and counseling records (including Cory's military records).

2

3. Disclosure of Iowa Department of Human Services (DHS) records regarding N.K.W.

I will address each item separately.

### A. *Disclosure of "Other Incidents" Evidence*

Products liability cases often involve evidence of other, allegedly-similar incidents. *See, e.g.*, *Chism v. CNH America L.L.C.*, 638 F.3d 637 (8th Cir. 2011); *Katzenmeier v. Blackpowder Products, Inc.*, 628 F.3d 948 (8th Cir. 2010). Plaintiffs may seek to introduce evidence of other incidents to show "defendant's notice of defects, the defendant's ability to correct known defects, the magnitude of the danger, the product's lack of safety for intended uses, or causation." *Lovett ex rel. Lovett v. Union Pacific R. Co.*, 201 F.3d 1074, 1081 (8th Cir. 2000). However, "[u]nless the facts and circumstances of other incidents are 'substantially similar,' such evidence is inadmissible because admitting such evidence could 'raise extraneous controversial issues, confuse the issues, and be more prejudicial than probative.'" *Katzenmeier*, 628 F.3d at 951. The party seeking admission of evidence concerning other incidents has the burden to show that the circumstances between the incidents are substantially similar. *J.B. Hunt Transport, Inc. v. General Motors Corp.*, 243 F.3d 441, 445 (8th Cir. 2001) (citation omitted). The other party may then need to rebut the "substantial similarities." *Estate of Thompson v. Kawasaki Heavy Industries, Ltd.*, 933 F. Supp. 2d 1111, 1140 (N.D. Iowa 2013). Clearly, discovery concerning potentially-relevant other incidents is important to all parties.

In its first set of interrogatories, Lamplight included the following interrogatory to the plaintiffs:

> **Interrogatory No. 6**: If Plaintiffs rely on any other incident, accident or occurrence alleging ingestion of a Lamplight product or another manufacturer's product in support of their claims in this case, **Identify** with particularity the person allegedly ingesting the product and any witnesses claiming knowledge of the incident, the date, location and circumstances of

> the ingestion alleged, the person or persons reporting the incident or the source of the report of the incident, the specific product involved, and **Identify** any documents in Plaintiffs' possession relating to such alleged occurrence.

Doc. Nos. 67-2 at 3; 67-3 at 5. Plaintiffs responded that they were currently investigating incidents and intended to supplement their response "if and when Plaintiffs decide if they will be relying upon other incidents." Doc. No. 67-4 at 2. In particular, plaintiffs stated that they were predominantly relying on informational reports previously provided by the defendants[1] and that any other information "consists of Plaintiffs counsel's work-product, including online research and requests to government entities. Th[e] material is privileged, but it is equally available to defendants through their own efforts."[2]

During the hearing, plaintiffs acknowledged that the defendants are entitled to discover which other incidents plaintiffs will seek to rely upon at trial. However, the parties disagreed as to when plaintiffs should be required to disclose that information in light of the January 15, 2015, discovery deadline. Lamplight requested that plaintiffs be required to produce the information by mid-August (or September 1 at the latest), while plaintiffs requested that the deadline be set in mid-October. Plaintiffs argued that they need additional time because the reports they received from the defendants provided limited information, thus requiring extensive investigation on their part. *See* Doc. No. 68 at 2. Lamplight countered that the defendants will need time to conduct their own investigations into the other incidents plaintiffs intend to rely upon. Because the parties have agreed that this disclosure is required, the only issue to be resolved is the timing.

---

[1] This is a reference to reports of other ingestion incidents produced by Lamplight and its outside contractor, PROSAR. Plaintiffs' subpoena of PROSAR for those reports was the subject of an earlier discovery dispute in this case. *See* Doc. Nos. 32 and 33.

[2] Plaintiffs' counsel clarified during the hearing that this includes information gathered during the course of other torch fuel oil cases her firm has handled.

In order to give all parties adequate opportunity for discovery, I will require plaintiffs to supplement their answer to Interrogatory No. 6 on or before **September 22, 2014**, by disclosing the requested information with regard to all other incidents about which they reasonably anticipate offering evidence at trial. Evidence concerning incidents that are not disclosed by this deadline will be subject to exclusion at trial unless plaintiffs are able to demonstrate that they could not, despite the exercise of diligence, have discovered such incidents on or before that date.

### B. *Disclosure of Mental Health and Counseling Records*

The parties agree that Iowa law determines whether the physician-patient privilege applies in this case. *See, e.g., Clay v. Woodbury County, Iowa*, 965 F. Supp. 2d 1055, 1058 (N.D. Iowa 2013). Physician-patient privilege did not exist at common law but, instead, was created by statute. *Chung v. Legacy Corp.*, 548 N.W.2d 147, 148 (Iowa 1996). Section 622.10 of the Iowa Code establishes that medical professionals may not generally disclose confidential communications that arise in their professional capacities. The Iowa Supreme Court "ha[s] consistently interpreted this statute liberally to accomplish its goal of fostering candid communications between doctor and patient." *Chung*, 548 N.W.2d at 149. However, there is no physician-patient privilege "in a civil action in which the condition of the person in whose favor the prohibition is made is an element or factor of the claim." Iowa Code § 622.10(2). This is often called the "patient-litigant exception." *Ashenfelter v. Mulligan*, 792 N.W.2d 665, 672 (Iowa 2010). The question here is whether the plaintiffs have made their mental health and emotional status a factor or element in the claim.

Lamplight argues that plaintiffs have made their mental health and emotional status an element or factor in the case and, therefore, the patient-litigant exception applies. Doc. No. 67-2 at 7-8. Lamplight relies on (a) initial disclosures in which plaintiffs identified witnesses who may testify about Cory's and/or Bonnie's "emotional trauma"

5

and (b) the fact that the plaintiffs seek to recover damages for loss of consortium. *Id.* at 7-11. I will address these alleged justifications separately.

***The (Non) Claims For Emotional Distress Damages.*** With regard to the first claimed justification, it is undisputed that the plaintiffs are not entitled to recover damages in this case for their emotional distress. *Id.* at 9 (citing Iowa Civil Jury Instruction 200.29); Doc. No. 68 at 4-5, 7-8.[3] The complaint includes no such request for relief. Doc. No. 2. Plaintiffs admit that they erred in identifying potential "emotional trauma" witnesses in their initial disclosures. In response to a question I posed during the hearing, plaintiffs' counsel stated a willingness to supplement plaintiffs' initial disclosures to remove references to "emotional trauma."

Under these circumstances, the issue of whether plaintiffs are making a claim for emotional distress damages should have been resolved before the present motion was filed (or, at the latest, soon thereafter). Plaintiffs either do or don't assert a claim for emotional distress damages. There is no middle ground. Their current position (which is consistent with their complaint) is that they don't. Because she admittedly erred by serving initial disclosures that included "emotional trauma" witnesses, plaintiffs' counsel easily could have fixed the problem by supplementing those disclosures when opposing counsel first raised the issue. Instead, all parties have wasted time, money and resources by continuing to fight about a non-issue. Based on plaintiffs' counsel's representations, both in plaintiffs' written response and during the hearing, I find that plaintiffs are not seeking – and admit that they are not entitled to seek – an award of damages for Cory's or Bonnie's emotional distress. Because this case presents no such claim, I reject

---

[3] "Under Iowa law, parents of a child can sue 'for the expense and actual loss of services, companionship, and society' due to the injury of a minor child. Iowa Code § 613.15A. Recovery cannot be based on the parent's 'grief, mental anguish, or suffering.'" *Two Rivers Bank & Trust v. Atanasova*, 686 F.3d 554, 564 (8th Cir. 2012) (quoting *Wardlow v. City of Keokuk*, 190 N.W. 2d 439, 448 (Iowa 1971)).

Lamplight's first purported justification for the compelled disclosure of Cory's and Bonnie's mental health records.[4]

***The Claims For Loss Of Consortium.*** Lamplight's alternative argument is that the defendants are entitled to the requested records because Cory and Bonnie seek to recover damages for loss of consortium arising from the death of their minor child. Lamplight contends their mental health records are "*potentially relevant*" to loss of consortium claims because those claims "implicate the nature of the emotional bond, or lack of one, between the parent and child." Doc. No. 67-2 at 10-11 [emphasis added]. However, Lamplight's counsel acknowledged that he is aware of no Iowa case holding that a parent puts his or her mental health at issue, thus invoking the patient-litigant exception, simply by asserting a loss of consortium claim. Nor have I located such a case through my own research.

Based on the statutory language and the relevant case law, I hold that a parent seeking damages for loss of consortium does not make his or her mental health and emotional status an element or factor for purposes of Iowa's patient-litigant exception. In the cases in which that exception has been applied, the plaintiffs made express, valid claims for emotional damages or otherwise directly put their mental health squarely at issue. *See, e.g.*, *Clay*, 965 F. Supp. 2d at 1059 (finding patient-litigant exception applied when plaintiff continued to seek "damages of an emotional or mental nature").[5] The Iowa Supreme Court has cautioned against an overly-broad application of the exception,

---

[4] This holding is not conditioned on plaintiffs' service of supplemental initial disclosures. However, plaintiffs' counsel should carefully consider whether good faith compliance with Federal Rule of Civil Procedure 26(e)(1) requires that action.

[5] In addition to *Clay,* defendants rely on *Pundt v. Select Portfolio Servicing, Inc.*, No. C10-0159, 2011 WL 6396617 (N.D. Iowa Dec. 20, 2011) (claiming emotional distress damages due to allegedly false reporting of information); *Walker v. Northwest Airlines Corp.*, No. Civ.00-2604 MJD/JGL, 2002 WL 32539635 (D. Minn. Oct. 28, 2002) (seeking emotional distress damages in employment discrimination case); *Sandoval v. American Bldg. Main. Indus. Inc.*, No. 06 CV 1772 (RHK/JSM), 2006 WL 6607858 (D. Minn. Sept. 21, 2006) (seeking emotional distress damages in sexual harassment and discrimination case).

stating: "There are few cases in which an imaginative lawyer could not make the opposing party's physical or mental condition at least a factor in the case. If such tactics were sufficient to trigger the exception, there would be little left of the privilege." *Chung*, 548 N.W. 2d at 151.

Here, it is clear under Iowa law that a plaintiff's own emotional distress is not relevant to his or her loss of consortium claims. *See Wardlow,* 190 N.W.2d at 448 (finding trier of fact cannot consider grief, mental anguish or suffering of parents when awarding damages for wrongful death of a minor child); *see also* Iowa Civil Jury Instruction 200.29. Given that Cory's and Bonnie's emotional distress is not relevant, it would be strange indeed to conclude that they have nonetheless made their mental health and emotional status an element or factor of their claim. I hold that they have not. As such, their mental health records are privileged under Iowa law and are not subject to compelled disclosure.[6]

### C. *Disclosure of Department of Human Services Records*

According to Lamplight, discovery has revealed that the Iowa DHS removed N.K.W. and her sister from Bonnie's custody shortly before the incident that caused N.K.W.'s death. Doc. No. 67-2 at 12. Lamplight contends that the plaintiffs should be compelled to execute a release of their DHS file because the information in that file is likely to be relevant to plaintiffs' loss of consortium claim. *Id.* at 12-13. Lamplight argues that the Iowa Attorney General has described a procedure through which certain

---

[6] Lamplight requested Cory's military service records to determine whether those records include mental health records. Lamplight has offered no other justification or explanation for seeking military service records. Because Lamplight is not entitled to discover Cory's mental health records, it likewise is not entitled to compel disclosure of his military records.

parties *may* authorize the disclosure of DHS records and, therefore, the court should *compel* plaintiffs to do so in this case.[7] Doc. No. 70 at 5.

That is a rather large, and unsupported, logical leap. Like medical records, DHS records are protected from disclosure by statute. The Iowa Legislature has declared that "the confidentiality of all child abuse information shall be maintained, except as specifically provided by this section." Iowa Code § 235A.15(1). The statute then lists persons or entities to whom disclosure may be made under certain circumstances. *Id.* § 235A.15(2). That list includes "a parent or to the attorney for the parent of a child named in a report as a victim of abuse," as well as "a person or the attorney for the person named in a report as having abused a child." *Id.* § 235A.15(2)(a).

Unlike the statutory physician-patient privilege, Chapter 235A does not provide that a plaintiff waives the confidentiality of DHS records by asserting certain claims in a civil lawsuit. However, Lamplight argues that something akin to the patient-litigant exception should apply with regard to DHS records when a parent seeks damages for loss of consortium. Lamplight cites no case even remotely supporting such a conclusion. Regardless of how relevant the DHS records might be, Chapter 235A renders those records confidential and permits their disclosure only under certain circumstances. Because none of those circumstances are present here, Lamplight is not entitled to compel disclosure.
.

## IV. CONCLUSION

Lamplight's motion to compel (Doc. No. 67) is **granted in part and denied in part**, as follows:

1. The motion is **granted** with regard to information concerning other incidents plaintiffs intend to rely upon at trial. Plaintiffs shall supplement their answer

---

[7] According to Lamplight, to obtain the DHS records at issue it would be required to obtain a signed release from the parents, a subpoena and a court order. Doc. No. 67-2 at 13.

to Lamplight's Interrogatory No. 6 on or before **September 22, 2014**, by disclosing the requested information with regard to all other incidents about which they reasonably anticipate offering evidence at trial.

2. The motion is **denied** to the extent it seeks to compel disclosure of mental health records, military records and DHS records.

**IT IS SO ORDERED.**

**DATED** this 15th day of August, 2014.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE