# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| CORY C. WELLS as Administrator of the Estate of N.K.W., et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>LAMPLIGHT FARMS, INCORPORATED, et al.,<br><br>    Defendants. | No. C13-4070-MWB<br><br>*ORDER* |

## *I.  INTRODUCTION*

This case is before me on a motion (Doc. No. 76) by defendant Lamplight Farms Incorporated (Lamplight) to quash a Rule 30(b)(6) deposition notice and for protective order. Plaintiffs have filed a resistance (Doc. No. 78) and Lamplight has filed a reply (Doc. No. 79). While Lamplight requests oral argument, I have carefully reviewed the parties' submissions and conclude that oral argument is not necessary. *See* N.D. Ia. L.R. 7(c). The motion is fully submitted and ready for decision.

## *II.  BACKGROUND*

As detailed in prior rulings, this case stems from the death of a twenty-two month old girl, N.K.W., who was the daughter of plaintiffs Cory C. Wells (Cory) and Bonnie J. Wells (Bonnie). Plaintiffs allege that on August 2, 2011, Cory, N.K.W. and others were camping in Dickinson County, Iowa, when N.K.W. ingested a product called "Tiki Citronella Torch Fuel with Lemongrass Oil" (the Citronella Torch Fuel), causing her death.

Plaintiffs filed this action on July 30, 2013, alleging that Cory purchased the Citronella Torch Fuel at a Wal-Mart Store in Spencer, Iowa, on or about August 1, 2011. Cory asserts claims individually and as administrator of N.K.W.'s estate. Bonnie asserts claims individually. The initial defendants were: (a) Lamplight, which is alleged to have manufactured and distributed the Citronella Torch Fuel, (b) Rexam, which is alleged to have manufactured the child-resistant closure used by Lamplight for the Citronella Torch Fuel container, (c) Berry, which is alleged to be the successor-in-interest to Rexam, (d) Bradley, which is alleged to have assisted Lamplight in the design, manufacture and distribution of the Citronella Torch Fuel, and (e) Wal-Mart, which is alleged to be the retailer from whom Cory purchased the Citronella Torch Fuel.

Plaintiffs originally asserted two theories of liability: (1) that the child-resistant closure included with the Citronella Torch Fuel purchased by Cory was defective and (2) that the design of the transparent container was defective in that when it contained Citronella Torch Fuel, it could appear to a small child to be a bottle of apple juice. On October 28, 2014, plaintiffs dismissed their claims against Rexam and Berry, along with "any and all claims that the closure mechanism on the Lamplight torch fuel product failed in any respect, including any claims that the container bottle did not properly mate with the cap or that the cap failed in some other manner that defeated the child-resistant safety closure function." Doc. No. 73 at 1-2. Thus, the design defect claim based on the product's packaging is the only remaining theory of liability. Trial is scheduled to begin June 15, 2015.

On November 26, 2013, I approved and entered (Doc. No. 27) the parties' joint proposed scheduling order and discovery plan (the Scheduling Order). The Scheduling Order established deadlines of July 1, 2014, for plaintiffs to disclose expert witness information, September 1, 2014, for defendants to disclose expert witness information and October 1, 2014, for plaintiffs to disclose any rebuttal expert witness information. The Scheduling Order also set January 15, 2015, as the deadline for the completion of

all discovery. Doc. No. 27 at 1-2. To date, no party has filed a motion to extend any of the deadlines established in the Scheduling Order.

On July 1, 2014, plaintiffs served the expert report (Report) of Timothy H. Bohrer (filed herein as Doc. No. 78-2). In the Report, which is dated June 27, 2014, Bohrer states that plaintiffs' counsel asked him to consider the feasibility of three alternative packaging designs: (1) an "Alternative Torch Fuel Package," which is basically the same container Lamplight was using in 2011 but in a black opaque color, (2) a "Fuel Can Package," which is "known in the industry as a slant handled F-Style container," and (3) a "Paint Thinner Package," which is "known in the industry as an F-style steel can." Report at 1-2, 7, 10. Bohrer concluded that the Alternative Torch Fuel Package "would have been highly practical to be in place before May 2011 and for as long as ten years before then." *Id.* at 6.[1]

As for the second alternative, the Fuel Can Package, Bohrer stated that he could not give an opinion as to whether it was feasible. He indicated that the Fuel Can Package "offers significant logistics & supply challenges," and thus he could not "assess whether the adoption of the Fuel Can Package would have been practical from a supply & logistics perspective so that it could have been implemented before May 2011 until I receive additional information." *Id.* at 8, 10. That additional information included "detailed information regarding Lamplight's current equipment configuration" and "operating practices for their entire product line." *Id.* at 8-9.

With regard to the third alternative, the Paint Thinner Package, Bohrer wrote that it is "reportedly quite expensive and difficult to justify for small volumes" and "offers significant challenges from a logistical and operations standpoint." *Id.* at 10-11. He reported some additional concerns and concluded that he could not state that the Paint Thinner Package was a feasible alternative without "detailed information regarding

---

[1] Lamplight states that it began using this design in 2012 and "does not contest the technical and economic feasibility of that design." Doc. No. 77 at 5, n.3.

Lamplight's current equipment configuration" and until he could determine "how a family of preformed containers of the same style as the Paint Thinner Package (with smaller sizes without handles) would run on existing filling lines." *Id*. at 11.

Thus, as of June 27, 2014, Bohrer was able to opine that the first option was a reasonable alternative design but reported that he could not form opinions as to the other two options without additional information. It appears that plaintiffs took no steps to obtain that additional information until November 5, 2014, when their counsel served a Notice of Deposition Pursuant to Federal Rule of Civil Procedure 30(b)(6).[2] *See* Doc. No. 76-3 at 4-11 (the Notice). The Notice contains six broad topics, with a series of subtopics set forth under each.

Lamplight argues that the Notice is improper because (a) it is far too late for plaintiffs to disclose additional expert opinions and, in the alternative, (b) the topics described in the Notice are overly broad such that compliance would be unduly burdensome. Plaintiffs contend that they are entitled to disclose additional and/or supplemental expert opinions and point out that the Notice was issued two months before the close of discovery. Plaintiff also take issue with Lamplight's complaints concerning the scope of the Notice.

---

[2] The rule states:

> *Notice or Subpoena Directed to an Organization*. In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

Fed. R. Civ. P. 30(b)(6).

At the time Lamplight filed its motion, it had been advised that plaintiffs' sole purpose for issuing the Notice was to obtain additional information to provide to Bohrer for possible additions to his Report. Doc. No. 76-1 at 2. As I will discuss further below, plaintiffs now claim that the Notice also serves other, non-expert purposes. I will first address the Notice as it relates to the discovery of information to support additional expert opinions. I will then consider whether the Notice is appropriate for other reasons.

### III. ANALYSIS

#### A. Are plaintiffs entitled to conduct discovery for the purpose of supporting additional expert opinions?

As noted above, the Scheduling Order established July 1, 2014, as the deadline for plaintiffs to disclose expert witnesses and January 15, 2015, as the deadline for the completion of all discovery. Lamplight argues that because plaintiffs' expert disclosure deadline expired many months ago, plaintiffs are not entitled to conduct discovery that would serve no purpose other than to allow their expert to formulate new opinions. Plaintiffs counter by noting that the permissible scope of discovery is broad and that discovery remains open, meaning all discoverable information remains fair game.

The answer to this conundrum requires several steps. First, I must consider what the expert disclosure deadline really means. That is, what must be disclosed by the deadline established in the Scheduling Order? Second, I must consider the extent, if any, to which a party may disclose additional expert witness opinions after the deadline for disclosing those opinions has expired. Finally, if it appears that disclosing new expert opinions at this stage of the case would be improper, I must determine whether an order prohibiting the requested discovery is the appropriate relief.

##### 1. What must be disclosed by the expert disclosure deadline?

The answer to this question starts with Local Rule 26(b) which states, in relevant part:

**(b) Fed. R. Civ. P. 26(a)(2)(A) and (B): Disclosure of Expert Testimony.** Unless otherwise stipulated by the parties, the parties must, on or before the deadlines for disclosing expert witnesses established by the Rule 16(a) and 26(f) scheduling order and discovery plan, disclose their expert witnesses in accordance with the requirements of Federal Rules of Civil Procedure 26(a)(2)(A) and (B).

N.D. Ia. L.R. 26(b). The rule of procedure referenced in this local rule states:

(2) *Disclosure of Expert Testimony*.

  (A) *In General*. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

  (B) *Witnesses Who Must Provide a Written Report*. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

   (i) <u>a complete statement of all opinions the witness will express and the basis and reasons for them;</u>

   (ii) the facts or data considered by the witness in forming them;

   (iii) any exhibits that will be used to summarize or support them;

   (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

   (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

   (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(A)-(B) [emphasis added].[3]

These rules, when read together, establish that the expert witness disclosure deadlines contained in a scheduling order are deadlines for disclosing all required information about a retained expert, including all of the opinions he or she will offer at trial. This is also explained in the instructions the court provides for the parties' guidance in preparing a proposed scheduling order and discovery plan. That document states as follows, in relevant part:

> The deadlines for the plaintiff to disclose experts, for the defendant to disclose experts, and for the plaintiff to disclose rebuttal experts should be no more than **3 months**, **5 months**, and **6 months**, respectively, after the date the proposed scheduling order and discovery plan is submitted to the Clerk of Court. Except as otherwise stipulated by the parties or ordered by the court, the parties must, by these deadlines, disclose to the other parties: (a) the identity of each expert witness; and (b) a written report prepared and signed by each expert witness, as required by Federal Rule of Civil Procedure 26(a)(2)(B). <u>The report must contain a complete statement of all opinions to be expressed and the basis and reasons therefor</u>; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

*See* Instructions and Worksheet for Preparation of Scheduling Order and Discovery Plan (Worksheet) at 3 (available on the "Forms" page of the court's website) [**bold** emphasis in original; <u>underlined</u> emphasis added].

In short, Lamplight is correct that the Report served July 1, 2014, should have included all opinions Bohrer intends to offer at trial, not just some of those opinions. The

---

[3] There is no dispute that Bohrer falls within the scope of Rule 26(a)(2)(B) in that he has been "retained or specially employed to provide expert testimony in the case."

next step is to consider the circumstances, if any, under which a party may add new opinions after the expert disclosure deadline.

### 2. *Can additional opinions be disclosed later?*

Plaintiffs go to great lengths to point out that Lamplight was fully aware of the fact that Bohrer intended to formulate additional opinions concerning the second and third alternative designs later in the case. They note that he not only made this clear in his Report, but also during his deposition. Doc. No. 78 at 3-7. They then contend that Rule 26 expressly contemplates the possibility that experts might need to supplement their opinions after they are first disclosed. Specifically, they point to Rule 26(a)(2)(E), which states:

> (E) *Supplementing the Disclosure*. The parties must supplement these disclosures when required under Rule 26(e).

Fed. R. Civ. P. 26(a)(2)(E). Rule 26(e), in turn, states:

> (e) *Supplementing Disclosures and Responses*.
>
> (1) *In General*. A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B) as ordered by the court.
>
> (2) *Expert Witness*. For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information

> must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Fed. R. Civ. P. 26(e). According to plaintiffs:

> This rule expressly provides for the very situation before this court, that being an expert supplementing his opinions due to need for obtaining additional information during discovery. The issuing of the Rule 30(B)(6) deposition notice and the supplementation of Mr. Bohrer's expert report and/or expert opinions is absolutely consistent with the federal rules governing discovery.

Doc. No. 78 at 10.[4]

Plaintiffs rely largely on *Minebea Co., Ltd. v. Papst*, 231 F.R.D. 3 (D.D.C. 2005), in support of their argument that they are free to disclose supplemental expert opinions after the expert deadline set forth in the Scheduling Order. *Minebea*, however, does not support plaintiffs' argument. In that case, the plaintiff timely disclosed an expert witness and provided a report outlining his opinions. 231 F.R.D. at 5. After trial started, the plaintiff proceeded a "supplemental report" that provided additional information in four distinct sections. *Id.* The court rejected the proposed supplementations in large part, with the exception of changes that simply corrected inaccurate data in the original report or rebutted alleged mischaracterizations by the defendant's expert. *Id.* at 6-8. In permitting only limited supplementation, the court stated:

> Rule 26(e)(1) provides a limited exception to the deadlines provided in Rule 26(a)(2)(C),[5] requiring that an expert witness supplement his report if he

---

[4] Plaintiffs also reference the Advisory Committee Notes to the 2010 Amendments to Rule 26 for the proposition that "Rules 26(b)(4)(B) and (C) do not impede discovery about the opinions to be offered by the expert or the development, foundation, or basis of those opinions." Doc. No. 78 at 10. This reference makes no sense, as Rules 26(b)(4)(B) and (C) protect certain draft reports and communications from discovery. Fed. R. Civ. P. 26(b)(4)(B)-(C). Those rules have nothing to do with the current issue.

[5] When *Minebea* was decided, Rule 26(a)(2)(C) governed the deadlines for expert witness disclosures. Due to amendments that took effect in 2010, it is now Rule 26(a)(2)(D), with some changes. In general, both versions provide that expert disclosures must be made by the deadline established in a scheduling order or, if no such date is established, then at least 90 days before

"learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not been made known to the other parties during the discovery process or in writing." Fed.R.Civ.P. 26(e)(1). Contrary to the suggestion of Minebea in its Motion for Leave to Supplement, Rule 26(e) does not permit parties to file supplemental reports whenever they believe such reports would be "desirable" or "necessary" to their case. <u>Rather, the Rule permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report.</u> *Keener v. United States*, 181 F.R.D. at 640; *Coles v. Perry*, 217 F.R.D. at 3 ("Fed.R.Civ.P. 26(e) does not grant a license to supplement a previously filed expert report because a party wants to, but instead imposes an obligation to supplement the report when a party discovers the information it has disclosed is incomplete or incorrect."). <u>Specifically, supplemental reports are permitted under Rule 26(e)(1) only in the following situations: (1) upon court order; (2) when the party learns that the earlier information is inaccurate or incomplete; or (3) when answers to discovery requests are inaccurate or incomplete.</u> *Keener v. United States*, 181 F.R.D. at 640. Minebea's liberal interpretation of Rule 26(e) would contradict the purpose of Rule 26(a)(2) and Rule 37(c)(1), which specifically prevent further disclosures of expert testimony as trial approaches.

*Id.* at 6 [emphasis added].

Plaintiffs seize on the words "information that was not available" to argue that *Minebea* supports their position. However, they have not shown that the information they now seek, via the Notice, was "not available" before Bohrer wrote his Report. Instead, the record shows only that they *did not ask for it*. Plaintiffs had over seven months between the date the Scheduling Order was entered and their deadline for disclosing experts to conduct the discovery necessary for Bohrer to form all of his opinions.[6] Not only did they fail to request the information before July 1, 2014, they waited over four months *after* that deadline to serve the Notice.

---

trial. Here, as noted above, the Scheduling Order established a deadline for plaintiffs to disclose expert witnesses.

[6] I note that this seven-month period is considerably longer than the three-month period suggested in the court's Worksheet. *See* Worksheet at 3.

If plaintiffs had made a prompt request, and Lamplight had refused to provide the missing information, then plaintiffs would have a legitimate argument that the information was "not available" when Bohrer wrote his report. Here, however, plaintiffs made no effort to obtain that information in time to comply with their expert disclosure deadline. This does not mean the information was "not available." It simply means plaintiffs were dilatory in attempting to gather it.

> As another district court in this circuit has explained, citing *Minebea*:
>
> The purpose of a supplemental report is to "inform the opposing party of any changes or alterations," *Tenbarge v. Ames Taping Tool Sys., Inc.*, 190 F.3d 862, 865 (8th Cir.1999), not "to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996). Rule 26(e) "permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report." *Minebea Co. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005).

*Christensen v. Quinn,* Civ. No. 10-4128-KES, 2013 WL 2181102, at *2 (D.S.D. 2013); *see also Chapman v. Labone,* 460 F. Supp. 2d 989, 998 (S.D. Iowa 2006) (striking portions of an affidavit offered in resistance to a summary judgment motion because they contained new expert opinions not addressed in the expert's report). Rule 26(e) does not authorize the practice of disclosing some expert opinions at the deadline and, only later, conducting discovery in hopes of adding additional opinions.

Plaintiffs clearly were aware that Bohrer intended to form more opinions after July 1, 2014, and, therefore, that they would not be disclosing all of his anticipated trial opinions by that deadline. Their argument that Lamplight was on notice of their intent to disclose more opinions later does not make untimely supplementation appropriate. Repeatedly telling the opposing party that you are going to disregard the Scheduling Order does not create justification for doing so.[7] Because it was apparent that plaintiffs'

---

[7] Lamplight notes that when Bohrer was deposed on August 12, 2014, he confirmed that he was not offering opinions concerning the second and third alternatives and stated that he had received

expert was not prepared to disclose all of his opinions by the established deadline, the correct approach would have been to seek an extension of that deadline, not to disclose only some opinions while, in effect, attempting to reserve the right to violate the Scheduling Order by disclosing more opinions later.  Had plaintiffs sought an extension, and demonstrated good cause, all expert deadlines could have been adjusted at a time when doing so would not have impacted the discovery deadline or trial date.

Because plaintiffs did not obtain (let alone seek) an extension, and because Rule 26(e) does not justify the addition of new expert opinions long after the expert disclosure deadline, it is apparent that plaintiffs' effort to conduct expansive, additional discovery for the purpose of allowing Bohrer to formulate additional opinions does not comply with the rules of procedure.  The next question is whether Lamplight's proposed remedy – an order quashing the deposition notice – is appropriate.

### 3. *Should the Notice be quashed?*

Plaintiffs correctly note that an order quashing the Notice, and prohibiting discovery of information that might allow Bohrer to form new opinions, would have the effect of a sanction excluding expert testimony.  That is, they would be barred from procuring, and thus presenting at trial, expert opinions as to the feasibility of the second and third alternative designs.  They contend that such a sanction is not appropriate under the facts present here.  I disagree.

Trial courts have "wide discretion" to fashion appropriate remedies for a party's failure to timely disclose expert opinions. *Wegener v. Johnson,* 527 F.3d 687, 692 (8th Cir. 2008).  The factors to consider include "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the

---

no assignments to do any additional work on the case. Doc. No. 77 at 7 (citing Doc. No. 76-3 at 54-55).  Thus, plaintiffs' intent to disclose additional opinions later in the case may not have been as obvious as they now suggest.

information or testimony." *Id.* (citing *Sellers v. Mineta*, 350 F.3d 706, 711–12 (8th Cir. 2003). These factors weigh heavily in favor of the relief Lamplight seeks.

Plaintiffs have provided no reason for their noncompliance. Instead, they argue as if it is perfectly acceptable to disclose only some expert opinions by the disclosure deadline. As noted above, this is incorrect. Moreover, plaintiffs clearly knew in advance of the July 1, 2014, deadline that Bohrer needed more information in order to formulate opinions as to alternatives two and three. By that time, this case had been on file for nearly one year. Plaintiffs have not explained why they did not ask for, and obtain, the information Bohrer needed in a timely fashion.

As for surprise and prejudice, even if plaintiffs' noncompliance was not surprising, allowing new opinions to be disclosed at this late date would be prejudicial. Bohrer was deposed August 12, 2014, and the defendants' expert disclosure deadline was September 1, 2014. Because Bohrer offered no opinions concerning the second and third alternative designs, and because Lamplight does not dispute his opinion concerning the first alternative design, Lamplight had no reason to retain a packaging expert. Doc. No. 77 at 7. If plaintiffs are permitted to disclose and rely upon new opinions from Bohrer, Lamplight will not only have to re-depose him, but will then almost surely have to retain a new, last-minute expert. Lamplight was entitled to rely on plaintiffs' expert disclosure in making its own decisions concerning expert witnesses. Allowing the disclosure of new opinions at this stage of the case would clearly cause prejudice to Lamplight.

Likewise, allowing new opinions would disrupt the order and efficiency of trial. Discovery is scheduled to close January 15, 2015. Reopening the expert witness disclosure process would clearly require an extension of that deadline. By the time plaintiffs took the deposition(s) described in the Notice, provided the relevant information to Bohrer and obtained his new opinions, that deadline would be imminent (if not already expired). Lamplight would then have to re-depose Bohrer, retain its own expert and procure opinions from that expert. This process would require extensions of existing deadlines and a continuance of the current trial date.

As for the importance of the information or testimony, plaintiffs have not acted as if it is of great import. As noted above, Bohrer's Report made it very clear that he could not offer opinions concerning the second and third alternatives without receiving additional information. Not only did plaintiffs fail to seek and obtain that information before July 1, 2014, they then waited four months before requesting it. Even if the information is as important as plaintiffs now suggest, this factor does not outweigh the other factors, discussed above, that militate against allowing the disclosure of untimely expert opinions at this stage of the case.

I have considered less-severe remedies but find that none are appropriate. Plaintiffs seek to violate the Scheduling Order and the applicable rules of procedure by adding new expert opinions long after their deadline for doing so. If they had a reasonable explanation, such as misconduct by an opposing party, then a different remedy might suffice. Here, however, the dilemma is entirely self-inflicted. Plaintiffs have provided no excuse for waiting until now to seek additional information to support new expert opinions. As such, and to the extent that this is the purpose of the Notice, an order quashing the Notice is required.

### B. *Is the Notice appropriate for other, non-expert reasons?*

In their resistance, plaintiffs state that obtaining information for Bohrer's use in forming opinions is not the only reason for the Notice. Instead, they state that information obtained via the Notice is relevant to their response to various affirmative defenses, including state-of-the-art, comparative fault and misuse. Doc. No. 78 at 15-16. There are several problems with this alternative argument.

First, it is clear that plaintiffs did not make the argument during the meet-and-confer discussions concerning the Notice. Lamplight's counsel has submitted an affidavit indicating that plaintiffs' counsel acknowledged during those discussions that "the purpose of the intended deposition was to obtain information to provide to their expert, Timothy Bohrer, for possible additions to his expert opinions." Doc. No. 76-1 at 2; *see*

*also* Doc. No. 79-1 at 2. Plaintiffs have not submitted an affidavit to the contrary. Thus, it is undisputed that at the time Lamplight filed its motion, plaintiffs had never suggested any "non-expert" reasons for the Notice. The failure to raise and discuss those alleged reasons violates counsel's obligation to confer in good faith in an effort to resolve discovery disputes without the court's intervention. *See* Fed. R. Civ. P. 37(a)(1); N.D. Ia. L.R. 37(a). If plaintiffs would have identified certain categories described in the Notice and explained why those categories sought relevant, non-expert information, the parties would have had the opportunity to reach an agreement concerning those categories and schedule an appropriate deposition. Plaintiffs' failure to raise the issue made this impossible.

Second, even now plaintiffs make no effort to explain how any category in the Notice could generate relevant, non-expert evidence. The Notice includes 47 separate categories organized under six broad topics. The relevance of the requested information, apart from gathering information that Bohrer would consider in evaluating the feasibility of the second and third design alternatives, is not apparent. Rather than explaining the potential relevance of any specific category, plaintiffs simply allege that the requested information is somehow relevant to certain affirmative defenses. A "threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Wells v. Lamplight Farms Inc.*, 298 F.R.D. 428, 433 (N.D. Iowa 2014) (quoting *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)). Plaintiffs have not made such a "threshold showing" of relevance here, at least apart from supporting untimely expert opinions.

Finally, even if plaintiffs could articulate a proper, non-expert purpose for some portion of the Notice, the Notice is far too broad. Clearly, it was drafted for the primary (if not sole) purpose of obtaining information for Bohrer's use in forming new expert opinions. Because that purpose is improper at this stage of the case, and because plaintiffs have not identified any specific portions of the Notice that might relate to non-expert

15

purposes, it makes no sense to require Lamplight's compliance with the Notice. Discovery must not only be relevant, it must also be proportional to the needs of the case. *Id.* (citing Fed.R.Civ.P. 26(b)(2)(C)). Any non-expert discovery needs could have been accomplished with narrowly-tailored discovery requests.

In short, even if the Notice arguably serves any purpose other than the gathering of information for untimely expert opinions, it must be quashed. Plaintiffs did not articulate any such purpose during the required meet-and-confer discussions and, in any event, have failed to make the showings of relevance and proportionality necessary to justify enforcement of the Notice.

## IV.   CONCLUSION

For the reasons set forth herein, Lamplight's motion (Doc. No. 76) is **granted**. The deposition notice (Doc. No. 76-3 at 4-11) is hereby **quashed**.

**IT IS SO ORDERED.**

**DATED** this 18th day of December, 2014.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE