IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| CORY C. WELLS, *et al.*, | |
| Plaintiffs, | No. C13-4070 |
| vs. | RULING ON MOTION TO QUASH |
| LAMPLIGHT FARMS INCORPORATED, *et al.*, | |
| Defendants. | |

On the 15th day of January 2015, this matter came on for telephonic hearing on the Motion to Quash Notices of Presidents and Chief Executive Officers' Depositions and for Protective Order (docket number 80) filed by Defendant Lamplight Farms Incorporated ("Lamplight") on December 17, 2014. Plaintiffs were represented by their attorney, Patrick E. Carr. Lamplight was represented by its attorneys, Richard J. Sapp and Ryan Leemkuil.

On August 2, 2011, 22-month-old N.K.W. tragically died after ingesting "tiki oil" manufactured by Lamplight. Plaintiffs sued Lamplight asserting N.K.W.'s death was caused by defective packaging. Also named as a defendant is W.C. Bradley Co. ("Bradley"), Lamplight's parent company.

On November 26, 2013, the Court adopted a proposed Scheduling Order submitted by the parties. Among other things, the Court established a January 15, 2015 deadline for completion of discovery. In reliance on those deadlines, trial was scheduled before Judge Mark W. Bennett beginning on June 15, 2015.

To date, Plaintiffs have taken two depositions. In response to Plaintiffs' amended notice of deposition pursuant to FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6), Lamplight

designated William Tobin and Pamela Drake to testify regarding the subjects identified in Plaintiffs' amended notice. The depositions were taken on November 11 and 12, 2014, respectively.

On December 5, 2014, Plaintiffs served additional notices of deposition, ostensibly pursuant to RULE 30(b)(6), noticing the depositions of Joel Borgardt, Marc R. Olivié, and William B. Turner, Jr., for December 10 and 12, 2014.[1] Borgardt is president and chief operating officer of Lamplight. Olivié is president and chief executive officer of Bradley. Turner was president and chief operating officer of Bradley until his retirement in November 2008. Defendants ask the Court to quash the notices of deposition and enter a protective order prohibiting Plaintiffs from taking the requested depositions.

Protective orders which totally prohibit the deposition of an individual are rarely granted absent extraordinary circumstances. *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 145 F.R.D. 92, 96 (S.D. Iowa 1992) (citing *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979)). As the party seeking to prevent the depositions, Defendants carry a heavy burden to show why discovery should be denied. *Groupion, LLC v. Groupon, Inc.*, 2012 WL 359699, *2 (N.D. Cal.). Here, Defendants rely on the so-called "apex doctrine." "The apex doctrine 'protects high-level corporate officials from deposition unless (1) the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted.'"

---

[1] While Plaintiffs do not concede that the party being deposed is entitled to designate the appropriate witness under RULE 30(b)(6), they nonetheless served supplemental notices for depositions pursuant to RULE 30(b)(1) after Defendants objected on that ground. Interestingly, the supplemental notices set Borgardt's deposition on January 12 at 9:00 a.m. at Lamplight's corporate headquarters in Menomonee Falls, Wisconsin, while setting the depositions of Olivié and Turner at 1:30 p.m. and 3:30 p.m. on the same date at Bradley's corporate headquarters in Columbus, Georgia. Also, the notices identify some of the "matters" about which Plaintiffs intended to inquire.

*Bank of the Ozarks v. Capital Mortg. Corp.*, 2012 WL 293049, *1 (E.D. Ark.). *See also Groupion*, 2012 WL 359699 at *2 (same). The Court must balance the compelling interests of allowing discovery and protecting the parties and deponents from undue burden. *Bank of the Ozarks*, 2012 WL 293049 at *1.

I will first address Plaintiffs' request to take the depositions of Marc Olivié and William Turner. Olivié is president and chief executive officer of Bradley. Turner is retired, but held the positions of president and chief operating officer of Bradley prior to Olivié. Bradley owns 100% of Lamplight's stock. According to Lamplight's attorney, Bradley is a holding company which owns approximately 40 companies. Lamplight is a "stand alone" company, however, with Borgardt (Lamplight's president) making periodic reports to Olivié (Bradley's president). Bradley is not involved in Lamplight's day-to-day operations.

Because Bradley is Lamplight's parent company, Olivié receives periodic reports from Borgardt regarding Lamplight's performance. Not unexpectedly, Olivié was also informed of the incident resulting in N.K.W.'s death, the lawsuit, and Lamplight's subsequent efforts to study potential design changes. In his affidavit, however, Olivié states that neither he nor Bradley were directly involved in Lamplight's subsequent design study. There is no reason to believe that Bradley's president and former president have any "unique or special knowledge" of the facts in this case. The Court concludes that Defendants have carried their burden of showing why the depositions of Olivié and Turner should not be permitted.

The question of whether Plaintiffs should be permitted to take the deposition of Borgardt presents a closer question. Borgardt is president and chief operating officer of Lamplight. Borgardt states in his affidavit that because Lamplight is "not a large

company," it does not have a "large executive staff."[2] In his role as president and chief operating officer, it is Borgardt's practice to "receive a copy of any report of an alleged human ingestion accident involving torch fuel." Regarding the design change of the fuel container from clear to opaque following the accident in this case, Borgardt "was kept closely informed of developments on this issue by those employees who comprise the group studying that change and charged with implementing that change once the decision to change the design was made." Furthermore, Borgardt provided input and made the final decision.

> While I was therefore personally aware and kept closely informed of that decision, and gave my input where appropriate, the other Lamplight employees comprising that study group were more directly involved in the examination of that issue and the gathering of information leading to the design change decision. I performed my executive function of providing final approval for the design change once the recommendation was made.

Affidavit of Joel R. Borgardt (docket number 80-2) at 3, ¶ 4.

Unlike Olivié, who simply received periodic reports regarding Lamplight's performance and was informed of the design change, Borgardt played a more active role. Borgardt was "personally aware and kept closely informed" of the subsequent design decision. Borgardt gave his input on the issue and provided final approval. Borgardt asserts that Lamplight employees in the study group were "more directly involved in the examination of that issue." I do not believe, however, that the apex doctrine requires a litigant to depose every other person having knowledge before deposing the executive officer, if the executive officer played an active role in the issue at hand.

---

[2] At the hearing, Plaintiffs' counsel asserted that Lamplight has 60 employees.

I conclude that Borgardt's position can be distinguished from that of Olivié and Turner. Olivié and Turner served as chief executive officer and chief operating officer of Lamplight's parent company, and did not play any role in Lamplight's day-to-day operation. Because Lamplight is a comparatively small company, however, Borgardt plays an active role in every part of the company, including the subsequent design change. Simply because other Lamplight employees may have *more* knowledge regarding the subject, does not insulate Borgardt from testifying regarding *his* knowledge. Accordingly, the Court concludes that Defendants have failed to carry its "heavy burden" of showing that the deposition of Borgardt should be prohibited. *Groupion*, 2012 WL 359699 at *2.

It should be noted, however, that Lamplight is *not* required to identify Borgardt as a RULE 30(b)(6) witness. In response to Plaintiffs' earlier RULE 30(b)(6) request, Lamplight produced William Tobin and Pamela Drake, who spoke for the company on the subjects identified in the deposition notice. Borgardt, on the other hand, is only required to testify regarding his personal knowledge. Paradoxically, even though he is president and chief operating officer of Lamplight, Borgardt does not speak for the company when testifying pursuant to RULE 30(b)(1). *See Estate of Thompson v. Kawasaki Heavy Industries, Inc.*, 291 F.R.D. 297, 303 (N.D. Iowa 2013) (discussing the role of a RULE 30(b)(6) witness).

## ORDER

IT IS THEREFORE ORDERED that the Motion to Quash and for Protective Order (docket number 80) is **GRANTED in part** and **DENIED in part**. Plaintiffs are permitted to take the deposition of Joel Borgardt in his individual capacity, and Borgardt is required to testify regarding his personal knowledge of these events. Marc R. Olivié and William B. Turner, Jr. are not required to testify and the notices for their depositions are hereby quashed.

IT IS FURTHER ORDERED that the Motion to Extend Discovery Deadline (docket number 93) filed by the Plaintiffs is **GRANTED** for the limited purpose of taking the deposition of Joel R. Borgardt.

DATED this 16th day of January, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA